IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| ALBERT BROWN | PLAINTIFF |
| VS. | CIVIL NO. 3:16CV651-WHB-JCG |
| MITCH ADCOCK, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, MARY CURRIER, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES, AND MISSISSIPPI DEPARTMENT OF HEALTH | DEFENDANTS |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COME NOW, Defendants, by and through undersigned counsel, and serve their Memorandum of Law in Support of Motion for Summary Judgment.

## I.  UNDISPUTED FACTS

Plaintiff Albert Brown has filed the instant lawsuit alleging race discrimination and retaliation based on Mississippi State Department of Health's ("MSDH") failure to promote him to the position of Director of Health Informatics.  Doc. 3.  Plaintiff's Amended Complaint alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the equal protection clauses of the United States Constitution and the Mississippi Constitution against MSDH, Dr. Mary Currier, the State Health Officer, and Mr. Mitchell Adcock, MSDH's Chief Administrative Officer, in their individual and official capacities.  Doc. 3.  As shown below, the facts and applicable law do not support any of Plaintiff's claims and this case should be dismissed in its entirety.

Plaintiff was hired by the Mississippi State Department of Health ("MSDH") on or about January 1, 1997, as a Systems Analyst III.  (Ex. C).  He received a direct appointment to a

Systems Manager I position in July 1998.[1] (Ex. C). Over the course of his employment with MSDH, he has received promotions and raises. In 2008, Mr. Mitch Adcock and Mr. Ron Davis, the former Director of Human Resources who is also African American, determined that he should be promoted to be the manager of the help desk. (Ex. A, at 30-31; Ex. B, at 6, 11, 130; Ex. D, at 32). Although his classification remained the same, he assumed more supervisory responsibilities and direct reports. (Ex. A, at 30). Plaintiff remains in this position to date although he declined a promotion to a Systems Manager III position in March 2015 because he did not want any position other than that of Chief Information Officer ("CIO"). (Ex. A, at 37). Had Plaintiff accepted the position, he would have received a $9,764.96 raise for a total salary of $75,859.13, which is more than the Director of Health Informatics currently earns. (Ex. I).

Plaintiff's desire to be the Chief Information Officer ("CIO") at MSDH is well documented through two prior lawsuits.[2] Plaintiff first applied to be the CIO at MSDH in 2003. (Ex. A, at 37). He was not selected for the position and the position remained vacant for a period of time. (Ex. A, at 37). A Caucasian was transferred into the position in April 2004 and Plaintiff filed his first EEOC charge alleging race discrimination against MSDH. (Ex. A, at 27, 37). Plaintiff filed suit and a jury found in Plaintiff's favor in March 2006. (Ex. A, at 28). The CIO position became available again in September 2008 and Plaintiff applied. (Ex. A, at 38). Plaintiff was not selected and filed a second EEOC charge alleging race discrimination and retaliation. (Ex. A, at 38). The court granted MSDH's motion for directed verdict as to the race discrimination claim. (See Civil Action No. 3:11-CV-146, Doc. 55). A jury rendered a verdict

---

[1] Under certain circumstances, state agencies may hire using the direct appointment procedure rather than advertising for a position. (Ex. B, at 21). Ironically, Plaintiff complains about the direct appointment process despite the fact that he has been directly appointed to multiple positions.

[2] Plaintiff admits that he has been compensated for the fact that was not hired for the CIO position. (Ex. A, at 69-70).

in Plaintiff's favor on the retaliation claim in June 2012.[3]  (See Civil Action No. 3:11-CV-146, Doc. 55).

In late 2013, the CIO retired.  (Ex. B, at 43).  At the time, MSDH was experiencing problems in the management and conclusion of major IT projects.  (Ex. B, at 41, 43-44).  It was clear to Mr. Adcock that the focus on IT skills in the selection of a leader for the IT department had not been effective.  (Ex. D, at 54).  MSDH evaluated the needs and issues plaguing the IT department and determined that the department should be managed by someone with prior project management experience who also had a working knowledge of and relationship with Information Technology Services ("ITS") in addition to technical skills.[4]  (Ex. D, at 49, 54, 61; Ex. B, at 97).  It was determined that the appropriate job classification for head of the IT Department is that of an Office Director.  The Office Director classification is the predominant classification used in state government for department heads.  (Ex. A, at 34; Ex. B, at 41, 51-52).

Mr. Adcock consulted with ITS, and ultimately identified Kevin Gray as an individual who had the requisite technical skills, project management experience, and relationship with ITS for the Director of Health Informatics position.  (Ex. D, at 44).  Mr. Adcock consulted with human resources and MSDH's legal department as to whether he could make a direct hire for the Director of Health Informatics position.  (Ex. D, at 60).  He was given clearance to do so and hired Kevin Gray.  (Ex. D, at 60).

Mr. Adcock announced that Kevin Gray was the incoming Director of Health informatics on May 13, 2014.  (Ex. A, at 41-42 and Ex. 2 thereto).  Plaintiff promptly sent Mr. Adcock an email stating that he was going to file an EEOC charge.  (Ex. A, at 42, 58; Ex. F).  Plaintiff filed

---

[3] The jury's verdict was rendered prior to the United States Supreme Court's decision in *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013), which clarified the standard of causation in retaliation cases.

[4] ITS is the state agency with responsibility for computer services for the State of Mississippi.

his charge alleging race discrimination and retaliation the same day. (Ex. A, at Ex. 1 thereto). Plaintiff's Amended Complaint also references his rejection of a settlement offer and continuous complaints about race discrimination as the basis of his retaliation claim. Doc. 3. However, other than the grievance Plaintiff filed after the filing of the EEOC charge which forms the basis of this litigation, the most recent complaint Plaintiff could identify occurred no later than 2012. (Ex. A, at 12-13, 39, 60-61). Plaintiff rejected the settlement offer that was dated March 15, 2015, well after Kevin Gray was hired. Moreover, the Employee Appeals Board determined that Plaintiff was not retaliated against for rejecting the settlement offer. (Ex. A, at 51).

Plaintiff's resume represents that he has been a Systems Manager I for 21 years and has managed between ten (10) to twenty (20) employees. (Ex. E, at Ex. 3 thereto). However, these representations are false. According to Plaintiff's own testimony, he has managed approximately three (3) employees since around 2008, and has never managed more than eleven (11) employees at MSDH and has not been a Systems Manager I for twenty-one (21) years. (Ex. A, at 25, 26, 31-32). Plaintiff has no project management experience, and a review of his resume makes clear that Plaintiff's skills are technical in nature. (Ex. A, at 17-32, Ex. E, at Ex. 3 thereto; Ex. B, at 31-32). Mr. Adcock testified that he could not conclude that Plaintiff is qualified for the position based upon his resume and would have to consult with the Mississippi State Personnel Board for a determination. (Ex. E, at 43-48, 57-58). In contrast, Kevin Gray had the requisite project management experience through his employment at ITS. (Ex. A, at 43-44).

Since assuming the role as Director of Health Informatics, Mr. Gray has successfully managed multiple major projects, many of which were problem areas prior to his hire. (Ex. D, at 62-63). Dr. Currier testified that she no longer receives complaints about the IT department and characterized Mr. Gray's performance as great. (Ex. G, at 50, 56-57). Examples of the many projects which Mr. Gray has successfully managed since his hire include electronic health

records, electronic reporting regarding communicable diseases, working on the immunization registry, and work with other programs such as TB, and HIV. (Ex. G, at 50, 53; Ex. H, at 42-45, and Ex. D, at 62-63).

## II.  LAW AND ARGUMENT

### A.  Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiff bears the burden of proof at the summary judgment stage to show that Defendants'' motion should not be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). He may not rest upon mere allegations or denials in his pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). He must do more than allege that he "might could" show certain facts at trial. *Howard v. City of Greenwood*, 783 F.2d 1311, 1315-16 (5th Cir. 1986). The evidence must not be "merely colorable" but must be "significantly probative." *Liberty Lobby,* 477 U.S. at 249. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Self-serving "allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (1997) (*citing Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir.1995)). "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir.2010).

The Fifth Circuit Court of Appeals has specifically noted that the trial court should coordinate Rule 56 requirements with the allocation of the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195-96 (5th Cir. 1986).

> If the movant ... does not bear the burden of proof, he should be able to obtain summary judgment simply by disproving the existence of any essential element of the opposing party's claim or affirmative defense . . . If the moving party can show that there is no evidence whatever to establish one or more essential elements of a claim on which the opposing party has the burden of proof, trial would be a bootless exercise . . . .

*Id.* at 1194-95. Similarly, in *Galloway v. Travelers Ins. Co.*, 515 So. 2d 678, 684 (Miss. 1987), the Mississippi Supreme Court construed Rule 56 stating:

> When a party opposing summary judgment on a claim or defense as to which that party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law.

In this case, Defendants are entitled to summary judgment because Plaintiff cannot establish that he was discriminated against on the basis of his race or retaliated against in any employment decision.

### B. Plaintiff Cannot Establish Race Discrimination or Retaliation Under Title VII

Plaintiff claims that he was denied a promotion based on his race and in retaliation for filing prior EEOC charges and the subsequent litigation resulting in jury verdicts in his favor. Although not set forth in his EEOC charge, Plaintiff's Amended Complaint also references his rejection of a settlement offer that was tendered well after the hiring decision was made. He also alleges that he was retaliated against because he continuously spoke out about race discrimination. However, the undisputed facts and applicable law clearly show that Plaintiff has nothing but his own subjective belief to support his claims.

1. **Title VII does not provide for individual liability.**

Although Plaintiff's Amended Complaint appears to state claims against Dr. Currier and Mr. Adcock under Title VII, the law in the Fifth Circuit is well settled with regard to the improper nature of claims against individuals under Title VII. Title VII prohibits **employers** from discriminating against an individual with respect to the terms and conditions of employment because of an individual's protected characteristic. An employer is a "person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. § 2000e(b). The Fifth Circuit Court of Appeals has repeatedly held that statute does not impose individual liability. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999). Further, plaintiffs may not maintain a suit against both an employer and its agent in an official capacity under Title VII. *Id.* Accordingly, Plaintiff's claims under Title VII against Dr. Currier and Mr. Adcock must be dismissed.

2. **Plaintiff's race discrimination claim against MSDH fails as a matter of law.**

In the absence of direct evidence of race discrimination, a plaintiff must utilize the burden shifting framework set forth in *McDonnell Douglas v. Green*. 411 U.S. 792 (1973). In order to establish a prima facie case of race discrimination based upon a failure to promote, Plaintiff must show that: "(1) [he] belongs to a protected class; (2) [he] sought and was qualified for the promotion; (3) [he] was denied the promotion; and (4) the position sought was filled by someone outside the protected class." *Johnson v. Louisiana ex rel Louisiana Bd. of Sup'rs*, 79 Fed. Appx. 684, 686 (5th Cir. 2003) (citations omitted).

If a plaintiff can establish a prima facie case, then a defendant has the burden of coming forward with a legitimate, non-discriminatory reason for the action taken. *Gregory v. Town of Verona*, 2013 WL 12091051, at *2 (N.D. Miss. Nov. 7, 2013) (citation omitted). Once a

defendant satisfies this burden, the inference of discrimination disappears and the plaintiff must show that the action was the result of intentional discrimination. *Id*. A plaintiff may do so by either showing that the proffered reason is pre-text for discrimination or that the discrimination was a motivating factor for the decision. Pretext is established by showing that the proffered reason is false or unworthy of credence. *Hernandez v. Metropolitan Transit Authority*, 673 Fed. Appx. 414, 419 (5th Cir. Dec. 21, 2016). Stated differently, the plaintiff must substantiate his claim []through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Gregory,* 2013 WL 12091051, at *2 (quotation omitted; alteration in original).

Plaintiff is unable to establish the prima facie elements of his race discrimination claim. As an initial matter, the undisputed facts clearly show that Plaintiff did not seek the position of Director of Health Informatics position. Plaintiff clearly testified that he only wanted the position of CIO, a position which was being eliminated, and that he never discussed a desire to apply for the Director of Health Informatics position with Mr. Adcock. Indeed, the only communication which Mr. Adcock and Plaintiff had regarding the Director of Health Informatics position was when Plaintiff informed Mr. Adcock that he would be filing an EEOC charge following the announcement of Kevin Gray's hire. The undisputed facts further show that Plaintiff was not qualified for the position Director of Health Informatics. Mr. Adcock clearly testified that he would have had to obtain approval of MSPB prior to hiring Plaintiff for the position. Plaintiff's resume indicates a lack of project management experience or experience in dealing with ITS. In addition, Plaintiff's resume also misrepresents his experience and qualifications.

Even assuming for purposes of this motion only that Plaintiff could establish a prima facie case of race discrimination, MSDH has a legitimate, non-discriminatory reason for the hiring decision. Mr. Adcock recognized that the leadership of the department required an

individual with project management skills and someone who had an established relationship with ITS.  Upon consulting with ITS, it was determined that Kevin Gray possessed these skills as well as the necessary IT knowledge.  Accordingly, Mr. Adcock sought approval of the human resources department and legal department, and offered Mr. Gray the position as a direct hire.[5]  "Hiring the best-qualified individual for the job is generally a legitimate, nondiscriminatory reason for an adverse employment decision."  *Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004).

In failure to promote cases, a "plaintiff may rebut the defendant's legitimate non-discriminatory reason by providing evidence that [she] was clearly better qualified than the employee selected for the position at issue."  *Davis v. Louisville Mun. School Dist.*, 2010 WL 147802, at *5 (N.D. Miss. Jan. 11, 2010) (alteration in original, internal quotation omitted).  However, as quoted in *Davis*,

> [T]he bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.

*Id*. (quotation omitted).  Plaintiff is unable to show that he is clearly better qualified than Mr. Gray and that no reasonable individual would have hired Mr. Gray.  He is also unable to show that MSDH's legitimate, non-discriminatory reasons are false, unworthy of credence, or that his race was otherwise a motivating factor in the hiring decision.  Indeed, the evidence shows that Kevin Gray's employment has been successful and that MSDH has resolved issues with multiple

---

[5] Defendants anticipate that Plaintiff will attempt to argue that by making a direct hire, which is clearly permissible under applicable law and regulations, that Plaintiff – and presumably every other potential job applicant – was deprived of their equal employment opportunity.  See Section 2.2.1 of Mississippi State Personnel Board Policies and Procedures.  This argument is incorrect and demonstrates a lack of understanding of equal employment opportunity laws.

212031.2                                        9

projects as a result. Accordingly, Plaintiff's claim of race discrimination in violation of Title VII must be dismissed.

### 3.     Plaintiff cannot establish a prima facie case of retaliation.

In order to establish a prima facie case of retaliation, a plaintiff must prove that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013). Temporal proximity can satisfy the causal connection, but the Fifth Circuit has found that a five month lapse is not sufficient to establish causation. *Id*. "However, the burden has now shifted to a heightened "but-for" causation, for which temporal proximity without more, will not suffice." *Hernandez*, 673 Fed. Appx. at 420.

If a plaintiff can establish these elements, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for its action. The burden then shifts back to the plaintiff to demonstrate pretext "by showing that the adverse action would not have occurred "but for" the retaliatory motive. In order to avoid summary judgment the plaintiff must show a "conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity." *Feist*, 730 F.3d at 454 (citations omitted and quotations omitted).

According to Plaintiff's EEOC charge, he believes that he was retaliated against because he filed two EEOC charges which resulted in lawsuits and jury verdicts in his favor. The first charge was filed in 2004. A jury awarded Plaintiff damages based on his claim that he was discriminated against when MSDH hired a Caucasian for the Chief Information Officer position. That verdict was rendered in March 2006. Plaintiff filed a second charge of discrimination in 2008 following the selection of a second Caucasian for the Chief Information Officer position. A jury found in favor of Plaintiff on his claim of retaliation in June 2012. Plaintiff's Amended

Complaint states, in a very cursory manner, that he has continuously complained about race discrimination. He also cites the fact that he rejected a settlement offer, which occurred in March 2015.

Plaintiff has engaged in protected activities during his employment at MSDH. With regard to the second element, Plaintiff has alleged an adverse employment action in that he was not promoted to the Director of Health Informatics position. However, Plaintiff did not apply for this position and testified that he did not want any position other than the Chief Information Officer. Finally, Plaintiff cannot show a causal connection between any protected activity and the hiring of Kevin Gray as Director of Health Informatics. The charge of discrimination that forms the basis of this lawsuit was filed on March 13, 2014. Clearly, the rejection of a settlement offer cannot be the reason why he was not promoted. With regard to any complaints of discrimination, Plaintiff testified about other complaints he has made through the years, but none are more recent than 2011 or 2012. These complaints are too remote in time to be the basis of a retaliation claim. Likewise, Plaintiff's prior litigation is too remote in time to be the basis of a retaliation claim.

As set forth supra, MSDH identified Kevin Gray as an individual who was qualified for the position and the direction in which MSDH wanted to take with regard to management of the IT department. Plaintiff cannot point to anything, other than his own subjective belief which is insufficient to defeat summary judgment, to prove that the decision to hire Kevin Gray was in retaliation for any protected activity of Plaintiff. *See Hernandez*, 673 Fed. Appx. at 421. He certainly cannot show a conflict in substantial evidence regarding MSDH's decision to hire Kevin Gray. Accordingly, Plaintiff's retaliation claim is due to be dismissed.

### 4. Plaintiff has failed to mitigate any alleged damages.

Assuming that Plaintiff was discriminated against, which Defendants adamantly deny, Plaintiff has a duty to mitigate his damages. In failure to promote claims, a claimant breaches this duty and "forfeits his right to backpay[,] if he refuses a job substantially equivalent to the one he was discriminatorily denied." *EEOC v. Exxon Shipping Co.*, 745 F.2d 967, 977 (5th Cir. 1984) (citation omitted). Here, Plaintiff has not actively sought equivalent employment and actually rejected a position which paid more than the position which he complains he was denied.

Plaintiff has also failed to seek substantially equivalent employment in both the public and private sector. As this Court found in Plaintiff's first lawsuit against MSDH, Plaintiff "could mitigate his damages by finding a job comparable to the CIO position within a three year period." *Brown v. Miss. Dep't of Health*, Civil Action No. 3:05-cv-109, Doc. 71. However, he has made no effort to do so. As Mr. Davis testified, "there have been numerous jobs, both in our agency and other agencies, at both his level and higher levels that have come open in the years he's been here. And he hasn't availed himself to apply for those jobs or move to those jobs, that's no one's fault but his own." (Ex. B, at 99). Indeed, Plaintiff refused MSDH's offer of a promotion which would have resulted in Plaintiff earning more than the Director of Health Informatics. As such, it is clear that Plaintiff has failed to mitigate his damages as required by applicable law.

### 5. The same actor inference precludes a finding of discrimination or retaliation.

The undisputed facts show that Mr. Adcock was responsible for Plaintiff's promotion to help desk supervisor. However, this is the very individual who Plaintiff claims discriminated against him by not promoting him to the Director of Health Informatics position. As noted by

the court in *Gregory v. Town of Verona*, "the Fifth Circuit has not held whether the "same actor" inference applies fully in failure to promote cases, common sense dictates that it would apply, to at least some extent, in an appropriate case." 2013 WL 12091051, at *4 (N.D. Miss. Nov. 11, 2013).

MSDH submits that this case is such an appropriate case. It makes no sense that Mr. Adcock would have selected Plaintiff for the position of help desk manager only to later discriminate against him. The fact that Plaintiff was offered a promotion to Systems Manager III, which is a natural progression with an IT department, also supports the application of the same actor inference in this case.

### C. Plaintiff Has Not Properly Pled a Claim Under 42 U.S.C. § 1981

Title VII is not the exclusive remedy for race discrimination by private employers. Plaintiffs may also bring claims under 42 U.S.C. § 1981. In cases involving governmental employers, however, a plaintiff must assert § 1981 claims under §1983. *Oden v. Oktibbeha County*, 246 F.3d 458, 463 (5th Cir. 2001); *Felton v. Polles*, 315 F.3d 470, 482 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 (2006) ("Needless to say, requiring §1981 claims against state actors to be pursued through §1983 is not a mere pleading formality."). Plaintiff's Amended Complaint is wholly devoid of any reference to § 1983. Accordingly, his claims of race discrimination and retaliation against the Mississippi State Department of Health pursuant to §1981 must be dismissed.

Plaintiff's claims against Dr. Currier and Mr. Adcock in both their individual and official capacities under § 1981 must also be dismissed. *Oden* makes clear that § 1981 claims against individuals in their official capacities must also be brought pursuant to § 1983. *Id*.; *Felton*, 315 F.3d at 481-82. *Felton* further clarified that §1983 is also the exclusive remedy for §1981 claims against state actors in their individual capacity. *See also Davis v. Louisville Mun. School Dist*.,

2010 WL 147802 (N.D. Miss. Jan. 11, 2010) (dismissing § 1981 claims in official and independent capacity based upon failure to plead claims under § 1983).

### D. Plaintiff's Equal Protection Claims Must Be Dismissed

Plaintiff's Amended Complaint is almost silent with regard to the basis for his claims for violations of the Equal Protection Clauses of the United States Constitution and Mississippi Constitution. However, the law is clear that these claims must be dismissed. The Mississippi Constitution does not contain an equal protection clause. *See Young v. Isola*, 2016 WL 6916790, at *11 (N.D. Miss. Nov. 23, 2016) (*citing Clemons v. United States*, 2013 WL 394394, at *10 (S.D. Miss. June 13, 2013)).

While the United States Constitution does contain an equal protection clause, such is not applicable to the claims made by Plaintiff. Equal protection claims "typically concern governmental actions that impact groups of citizens in different ways." *Klinger v. Univ. of So. Miss.*, 612 Fed. Appx. 222, 232 (5th Cir. 2015). The United States Supreme Court has held that "class of one claims do not apply in the context of public employment because employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Sprayberry v. Miss. State Dep't of Ed.*, 2016 WL 7742822, at *7 (S.D. Miss. May 26, 2016) (internal citations and quotations omitted). Plaintiff has not alleged any governmental action that affects a group of citizens. Accordingly, his individual equal protection claim must be dismissed. *Id*.

### E. Plaintiff May Not Recover Punitive Damages

The law is well-settled that Plaintiff may not recover punitive damages from Defendant MSDH. See 42 U.S.C. §1981a(b)(1). Because Plaintiff's claims against Mr. Adcock and Dr. Currier must be dismissed, he is also unable to recover any damages, including punitive damages

against Mr. Adcock or Dr. Currier. Accordingly, Defendants requests that this Court grant summary judgment in Defendants favor on Plaintiff's claim for punitive damages.

### III.   CONCLUSION

Based on the foregoing, it is clear that Defendants have shown that they are entitled to summary judgment on each and every one of Plaintiff's claims. Accordingly, Defendants respectfully request that this Court dismiss Plaintiff's claims entirely, with prejudice, taxing to the Plaintiff all costs of the action, and awarding Defendants such other and further relief as may be proper.

Respectfully submitted, this 1st day of August, 2017.

        **MITCH ADCOCK, MARY CURRIER, AND THE MISSISSIPPI STATE DEPARTMENT OF HEALTH**

BY:   s/ *Ashley Eley Cannady*
       ASHLEY ELEY CANNADY (MSB #101253)
       ARMIN J. MOELLER, JR. (MSB #3399)
       BALCH & BINGHAM LLP
       188 East Capitol Street, Suite 1400
       Jackson, Mississippi  39201
       Telephone:  (601) 961-9900
       Facsimile:  (601) 961-4466
       acannady@balch.com

## **CERTIFICATE OF SERVICE**

I, the undersigned counsel, do hereby certify that on August 1, 2017, I have electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

> Lisa M. Ross
> Post Office Box 11264
> Jackson, MS 39283-1264

s/ *Ashley Eley Cannady*
Ashley Eley Cannady