**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**ALBERT BROWN, JR.**                                                    **PLAINTIFF**

**VS.**                          **CIVIL ACTION NO. 3:16-CV-651-WHB-JCG**

**MITCH ADCOCK, in his individual capacity,**
**DR. MARY CURRIER, in her individual capacity,**
**MISSISSIPPI DEPARTMENT OF HEALTH**                          **DEFENDANTS**

**MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**COMES NOW**, the Appellant, Albert Brown Jr. ("Brown") and files this his

Memorandum in Support of his Opposition to Defendants' Motion for Summary

Judgment and for grounds would show the following to-wit:

**BACKGROUND FACTS AND PROCEDURAL HISTORY**

On July 30, 2010, Dr. Mary Currier, ("Currier") State Health Officer for the

Mississippi Department of Health ("MDH"), issued a memo reaffirming MDH's

commitment to equal opportunities.   Exhibit A, Currier's Memo.  Currier stated:

> "The Mississippi State Department of Health has and continues to
> strive to utilize human capital effectively by selecting persons that
> best fit the needs of the agency.  Selections for each particular
> opening **are made from among available candidates** on the basis
> of their knowledge, skills and ability in accordance with Mississippi
> State Personnel policies, practices and procedures.  Since the
> objective of our Equal Employment Opportunity Policy to optimize
> the use of qualified and available personnel to the fullest, it is the
> fundamental policy of the Mississippi State Department of Health
> to work continually towards improving recruitment, employment,
> training, promotional opportunities, retention and participation in
> all phases and levels of departmental programs and to administer
> **this policy in such a manner consistent with the goals to:**
> **Prevent discrimination because of race, color, creed, religion,**
> **sex, age, national origin, uniformed service, veteran status,**
> **physical handicap, disability, or political affiliation.  Ensure**

**that equal employment opportunity practices are applied agency-wide**." Exhibit A. (Emphasis added).

Currier issued the memo six months after the MDH board voted to make her the permanent State Health Officer for a six-year term. Exhibit B, January 13, 2010 Minutes of the MDH board.

### DR. MARY CURRIER SELECTED MITCH ADCOCK FOR CAO

Four years after Currier became the State Health Officer, she selected Mitch Adcock ("Adcock"), a white male, to serve as MDH's Chief Administrative Officer of Health Administration ("CAO"). Deposition of Mitch Adcock, Exhibit C, p. 14, 22; Exhibit D, October 8, 2014 Minutes of the MDH board; and Exhibit 30(b)(6) deposition of MDH, Exhibit E, p. 25. Adcock replaced Mike Lucius, who is white. Exhibit C, p. 14.

Adcock previously served as the MDH's Chief Financial Officer and Director of Office Administration. Exhibit C, p. 12-13, 16, and Exhibit D. In addition, Adcock served as MDH's CAO from 2004 through 2008. Exhibit C, p. 13, 20. Adcock left MDH in 2008 to work for another state agency. Exhibit C, p. 13, 14, 20.

Dr. Currier testified that she did not post the CAO position before she selected Adcock for the position. Deposition of Dr. Mary Currier, Exhibit X, p. 24. Dr. Currier says a white female and a white male were interviewed for the position. Exhibit X, p. 28. According to Dr. Currier, MDH does not have to post "if we have likely candidates who could fill the role." Exhibit X, p. 15-16. Currier has never selected an African-American male for a position that was not posted. Exhibit X, p. 17.

**THE DIRECTORS OF ALL DEPARTMENTS UNDER ADCOCK ARE WHITE**

When Adcock returned to MDH as the CAO in 2014, seven departments within MDH reported to him.  Exhibit F, MDH's 2014 Annual Report, Exhibit X, p. 29.  Those departments are Finance and Accounts, Facilities and Property Management, Human Resources, Information Technology, Public Health Pharmacy, Policy Evaluation and Vital Records.   Exhibit F.  At that time, whites headed all department directors under Adcock, except Human Resources.  Exhibit F, Exhibit C, p. 26.   When Ronald Davis Jr., who is African-American, retired as the Human Resources Director, Adcock selected a white female to replace him.  Exhibit C, 55, Exhibit P, p. 122.  As a result, all of Adcock's direct reports were white.

Adcock selected Kimberly Reese, who is white, to serve as Human Resources director after Davis retired.  Exhibit C, p. 55.  Sharon Nasianceno, ("Nasianceno"), who is white, was MDH's Chief Financial Officer ("CFO") when Adcock returned to MDH in 2014.   Exhibit F.  When Nasianceno left MDH, Adcock selected Sharon Dowdy, who is white, to serve as the CFO.  Exhibit C, p. 20, 25-26.  Adcock did not post the Chief Financial Officer's position before he selected Dowdy.  Exhibit C, p. 32.

The position of Director of Facilities and Property Management was vacant in 2014 when Adcock returned to MDH.  Exhibit F.  During his tenure as CAO, Adcock selected Jennifer Dotson, who is white, to head Facilities and Property Management.  Exhibit F and Exhibit E, p. 55, 118.  Kevin Gray, reportedly the Director of Health Informatics, was selected by Adcock to head MDH's Information Technology Department.  Exhibit C, p. 43, Exhibit F.  Gray is white.  Exhibit H.  Adcock did not post or advertise the DHI position before he selected Gray.  Exhibit C, p. 43.  Adcock

approached only Gray about the DHI position.   Exhibit C, p. 44.  Meg Pearsons is the

Director of the Public Health Pharmacy.   Exhibit F, Exhibit E, p. 55.   Pearsons is

white.  Exhibit E, p. 55.  Kathy Moon, who is white, was the director of Policy

Evaluation.   Exhibit F.   Judy Moulder was the Director of Vital Records.  Exhibit F.

Moulder is white, Exhibit E, p. 55.

## ADCOCK ANNOUNCES GRAY'S SELECTION AS DHI

On May 13, 2014, Adcock announced Gray's selection as DHI.  Brown's EEOC

Charge, Exhibit H.   Upset by Adcock's announcement, Brown filed a Charge of

Discrimination against MDH alleging Adcock did not give him an opportunity to

apply for DHI on account of his race and in retaliation for him suing MDH for race

and retaliation in 2003 and in 2008.  Exhibit H.  Brown is African-American.  Exhibit

H.

## BROWN'S WORK HISTORY

Before joining MDH, Brown worked as a support/hardware technician for

MISSCO Management Systems.  Exhibit I, p. 19.   Brown had supervisory duties at

MISSCO.  Exhibit I, p. 20-21.  Brown left his job at MISSCO to join the Mississippi

Secretary of State's office as a programmer 1 in 1993.  Exhibit I, p. 21.  Brown did

not have any supervisory responsibilities at the Secretary of State's office.  Exhibit I,

22.   When Brown got a better offer from the Mississippi Department of Corrections

("MDOC"), he left the Secretary of State's office.   Exhibit I, p. 22.   At MDOC, Brown

worked as a System Analyst III.   Exhibit I, p. 23.  Brown had supervisory

responsibilities at MDOC.  Exhibit I, p. 24.

In 1996, Brown left MDOC and joined MDH as a Systems Analyst IV.   Exhibit I, p. 25.  In the position of Systems Analyst IV, Brown supervised two employees. Exhibit I, p. 25.   After eight months at MDH, Brown became a Systems Manager I. Exhibit I, p. 25-26.  As a Systems Manager I, Brown managed the wide area network and systems developers at MDH throughout the State.   Exhibit I, p. 26.   Brown also supervised 11 employees as a Systems Manager I.  *See*, Exhibit I, p. 26.   Brown served as Systems Manager I from 1997 until he filed his first EEOC claim.  Exhibit I, p. 26-27.

## ADCOCK SELECTS MIKE SCALES FOR CIO WITHOUT ADVERTISING THE POSITION

On April 1, 2003, MDH created a position called Systems Information Chief, also known as CIO.  Exhibit J, Opinion and Order of U.S. District Judge William Barbour in *Brown v. Mississippi Department of Health*, 3:05-cv-00109-WHB-JCS ("*Brown 1*").   MDH hired Mike Scales, a white male, as DHI on August 11, 2003. Exhibit J.  On April 1, 2004, Scales was promoted to MDH's Chief Information Officer ("CIO").   Exhibit I, p. 37, 79, Exhibit J.  Brown was not selected.   Exhibit E, p. 79. Aggrieved that he was denied an opportunity to apply for the CIO position in 2004, Brown filed suit.  Exhibit J.

## MDH CLAIMED BROWN WAS NOT QUALIFIED FOR CIO

In *Brown I*, Brown alleged MDH selected Mike Scales for CIO without advertising the position and denied Brown an opportunity to apply on account of Brown's race.  Exhibit J.   MDH argued in Brown I that Brown was not qualified for CIO.   Exhibit J.  U.S. District Judge William Barbour reviewed Brown's resume. Exhibit J.  Judge Barbour held for summary judgment purposes Brown

demonstrated he was qualified for CIO, MDH's highest ranking position – Chief Information Officer.   Exhibit J.

**JUDGE BARBOUR FOUND MDH'S
LEGITIMATE NON-DISCRIMINATORY REASON
FOR SELECTING SCALES WAS PRETEXTUAL**

In *Brown I*, MDH claimed it selected Mike Scales because his qualifications were superior to Brown's.  Exhibit J.   More specifically, MDH argued Scales was selected as CIO allegedly because of the experience while employed with the Mississippi Department of Transportation made him more qualified candidate the position.  Exhibit J.   Judge Barbour found MDH's legitimate nondiscriminatory reason was pretextual and denied the defendant's Motion for Summary Judgment.  Exhibit J.

**JURY RETURNS A VERDICT AGAINST MDH
FOR RACE DISCRIMINATION**

On March 22, 2006, a jury returned a verdict against MDH on Brown's race discrimination claim.  Exhibit K, Form of Verdict.  MDH appealed the matter to the Fifth Circuit Court of Appeals.    Exhibit L, Opinion and Order of the Fifth Circuit Court of Appeals.   On January 17, 2008, the Fifth Circuit affirmed Judge Barbour's decision denying MDH's post trial motions.    Exhibit M.  On June 25, 2008, MDH satisfied the judgment in *Brown I*.  Exhibit N, Docket Sheet.

**MDH ADVERTISES THE CIO POSITION**

Within three months of paying the judgment in Brown 1, MDH advertised the CIO position.   Exhibit N and Exhibit O, Opinion and Order of U. S. District Court Judge Carlton Reeves, *Brown v. Mississippi Department of Health*, 3:11-CV-00146-CWR-FKB ("Brown II").   Brown applied for the position.   Exhibit O.  Brown was

interviewed.   Exhibit O.   MDH rejected Brown for the position.   Exhibit O.   MDH selected Marc Wilson, a white male, who submitted his application three and a half months after the deadline for applications.   Exhibit O.

Aggrieved by his non-selection, Brown filed a second lawsuit alleging race discrimination and retaliation.   Exhibit O.     In *Brown II*, Brown contended MDH took all of his duties away and removed and reassigned all of the employees under his supervision to different supervisors in retaliation for him suing and winning a judgment against MDH for race discrimination in his 2005 lawsuit.   Exhibit O. Brown also alleged that he was required to show up to work every day but was not required to do any work.   Exhibit O.

## DAVIS AND ADCOCK ASSIGNS HELP DESK
## DUTIES TO BROWN

Ron Davis, MDH's former Human Resources Director, claims he witnessed Brown regularly outside of his office talking on his cellular telephone.   Exhibit P. Prior to Brown filing *Brown II*, MDH removed all of his duties from him.   Exhibit O. Obviously, Davis recognized that relieving Brown of his duties bolstered Brown's retaliation claim.   As a result, Davis directed MDH officials to find something for Brown to do.   Deposition of Ron Davis, Exhibit P.  Brown subsequently was assigned duties for MDH's Help Desk.   Brown did not receive additional compensation for the Help Desk work he was assigned to perform.

## BROWN II ADVANCES TO JURY TRIAL

Judge Reeves entered a directed verdict against Brown on his race discrimination claim.   Exhibit Q, docket sheet.  Judge Reeves submitted Brown's retaliation claim to the jury.   Exhibit Q.  A jury returned a verdict for Brown on his

retaliation claim.   Exhibit Q.  The jury awarded Brown $75,000 in back pay and
$350,000 in compensatory damages for emotional pain and mental anguish.  Exhibit
Q.  Judge Reeves reduced Brown's award for compensatory damages to $210,000.
Exhibit Q.

## MDH APPEALS THE JURY VERDICT

MDH again appealed to the Fifth Circuit.   Exhibit R.  The Fifth Circuit
affirmed the district court's decision denying MDH's motion for a new trial.   Exhibit
R, Opinion and Order of the Fifth Circuit.   MDH filed a Petition for Writ of Certiorari
to the United States Supreme Court.  Exhibit S, U.S. Supreme Court Docket sheet.

While *Brown II* was pending possible review before the Fifth Circuit court,
MDH hired Gray for the DHI position.   Exhibit S.  Six months after the Supreme
Court denied MDH's petition for review, MDH offered to settle *Brown II* and Brown's
outstanding EEOC charge that gave rise to this lawsuit.  Exhibit T, Settlement
Correspondence.   MDH's offer required Brown to withdraw his outstanding EEOC
Charge and sign a release of all claims.   Exhibit T, Exhibit H.  In addition, Brown was
required to agree with MDH's proposal of how the judgment and the attorney fees in
the 2011 would be paid.  Exhibit T.  MDH also proposed the manner it would pay the
"amended judgment."   Exhibit T.   MDH also required Brown to enter into a
consulting agreement to work as a Systems Manager III with the caveat that Brown
on October 15, 2017.  Exhibit T.

Brown rejected the offer.  Subsequently, Brown filed this action alleging he
was denied an opportunity to apply for the DHI position on account of his race, was

treated less favorably than whites on account of his race and was retaliated against for filing lawsuits against MDH.

## LAW AND ARGUMENT

### SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to a material fact exists when, after considering the pleadings, depositions, answers to interrogatories, and affidavits, a court determines that the evidence is such that a reasonable jury could return a verdict for the party opposing the motion. *Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013). The Court considering a motion for summary judgment must consider all facts and evidence in the light most favorable to the nonmoving party. *Id.* (citing *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007); *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Where the parties dispute the facts, the Court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence. *Hays County*, 723 F.3d at 591 (citing *Vaughn v. Woodforest Bank*, 665 F.3d 632, 635 (5th Cir.2011); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). In addition, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Hays County*, 723 F.3d at 591 (citing *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The key question for summary judgment in an employment discrimination case is whether a rational trier of fact could find that the employer discriminated against the employee on the basis of the employee's membership in a protected class or retaliated against him because he engaged in protected activity. *Murphree v. Potter*, 226 F.Supp.2d 826, 835 (N.D. Miss. 2002). Employees in employment discrimination cases can defeat summary judgment if the evidence, in its totality, creates a fact issue as to whether the employer's asserted reasons for non-selection are false or an employee's membership in a protected class was a determinative factor in the action of which employee complains. *Murphree*, 226 F.Supp.2d at 835.

After reviewing the evidence proffered by Brown, this Court should conclude there are genuine issues of material facts as to whether MDH did not post the DHI position, denied Brown an opportunity to apply and selected a white male on account of Brown's his race and in retaliation for Brown's 2005 and 2011 lawsuits. Consequently, this Court should deny the defendants' Motion for Summary Judgment.

## ARGUMENT

### BROWN HAS ESTABLISHED
### A PRIMA FACIE CASE OF RACE DISCRIMINATION

Brown has sufficiently established a prima facie case of race discrimination under Title VII. Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case, Brown must show that (1) he belongs to a protected class; (2) he was qualified

for the position sought; (3) he was not promoted; and (4) a person outside of his protected class was hired for the position. *McDonald v. Entergy Operations, Inc.*, 75 F. App'x 279, 280 (5th Cir. 2003).

Contrary to Defendants' assertion, Brown can establish a claim for race discrimination under Title VII. MDH concedes Brown belongs to a protected class. Brown is African-American. In addition, there is no question that MDH selected someone outside of Brown's protected class. MDH choose Gray, a white male, for the DHI position.

### BROWN'S FAILURE TO APPLY
### FOR THE DHI POSITION IS NOT FATAL

The defendants seek to insulate themselves from liability on Brown's race claim by contending that Brown did not apply cannot for the position. Defendants are correct. Brown did not apply for the DHI position. That aside, Brown's failure to apply for the position, which was occasioned by the defendants' failure to post the position, is not fatal to his claim for race discrimination.

In *Teamsters v. U.S.*, 431 U.S. 324, 367-368, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977), the Supreme Court recognized that a person could state a claim under Title VII even though he never applied for a position. The Court explained that "[because] he is necessarily claiming that he was deterred from applying for the job by the employer's discriminatory practices, his is the not always easy burden of proving that he would have applied for the job had it not been for those practices.

Moreover, in *McLin v. Jackson State University*, 2015 U.S. Dist. LEXIS 25611 *12 (S.D. Miss.), the Court stated that "[f]ailure to apply for a disputed promotion will bar a `failure to promote' claim absent a showing that such an application would

have been a futile gesture. But `where a vacant position [is] not posted,' some courts have held that `a formal application will not be required' so long as the plaintiff shows `she expressed some interest in a promotion or that the employer had some reason or duty to consider [her] for the post.'"

In the instant case, the evidence is clear that filing an application would have been futile given the defendants' history of discriminating and retaliating against Brown. That is, Brown sued MSDH for race discrimination when Adcock selected a white male for the CIO position in 2004 and did not give Brown an opportunity to apply. *Brown v. Mississippi Department of Health*, 3:05-cv-00109-WHB-JCS ("Brown 1). In May 2008, one month before MSDH satisfied the judgment in Brown I, MSDH advertised the CIO position. Exhibits N and O. Brown applied for the position but he was not selected advertised the CIO position but did not select Brown. *Brown v. Mississippi Department of Health*, 3:11-CV-00146-CWR-FKB ("Brown II").

Dr. Currier testified that MSDH has grown weary of Brown's lawsuits. Exhibit X, p. 78. MDH was so feed up with Brown filing lawsuits that they hatched a plan to get him to leave his job. Exhibit T, Exhibit X, p. 76-77. Currier also was aware of plans to In fact, she testified that notwithstanding the jury verdicts against MSDH, the agency was being unfairly sued and wanted to spend time on other things. Exhibit X, p. 78. Adcock, the decisionmaker in the instant case, was also the decisionmaker when Brown was passed up for the CIO and a white male was selected for the position which was not advertised in *Brown I*. Exhibit I, p. 79. Adcock testified that he also was aware of *Brown II*. In *Brown II*, Marc Wilson, a white male was selected as CIO even though he applied for the job after the deadline

set forth in the advertisement. Brown applied for the CIO position in *Brown II* when it was advertised. Exhibit J.

Adcock's testimony, coupled with the acrimony created by Brown's race discrimination and retaliation lawsuits, establishes it would have been futile for Brown to apply for the DHI position. Adcock's conduct in this case mimics his actions in *Brown* I. In that case, Adcock selected Mike Scales, a white male, to serve as CIO without posting the job. Even though a jury returned a verdict against MDH in *Brown I* and *Brown II*, Adcock, nevertheless, selected Kevin Gray, a white male for the DHI position, the highest ranking position in its Information Technology Department, without posting the job. In both instances, Brown found out about Adcock's selections after Scales and Gray began work.

With the elimination of the CIO position, the DHI position became the highest-ranking position in MSDH's Information Technology department. Exhibit X, p. 49. In their Memorandum in Support of their Motion for Summary Judgment, the defendants acknowledged that everybody at MSDH knew Brown wanted to be the CIO. The evidence further shows the defendants only selected white males to hold the highest ranking position in its Information Technology Department. Exhibits H, J, and O. When MDH selected its first CIO, it choose a white male. When the CIO position opened in 2008, MDH selected a white male to replace the white male who left the position. Even though MDH officials now admit that the white males performed miserably as CIO, MDH took no action against them. When MDH supposedly eliminated the CIO and made the DHI position the highest-ranking position in its Information Technology Department, it again selected a white male

for the position and gave that white male the CIO's duties and responsibilities of the CIO. Exhibit X, p. 49.

For the reasons set forth above, Brown has produced sufficient evidence that filing an application would have been futile. In addition, the evidence proffered by Brown demonstrates that Adcock had a duty to consider Brown for the DHI position when MDH supposedly eliminated the CIO position, a position they knew Brown was interested in, and absorbed its functions into the DHI position. In the instant case, reasonable jurors can conclude that Brown's race and prior EEOC activity were factors in Adcock's decision not to advertise the job so that Brown could apply.

**BROWN IS MORE QUALIFIED
THAN SCALES TO SERVE AS DHI**

Adcock contends that Brown is not qualified for the DHI position. Exhibit C, p. 44. The defendants in their memorandum states that "Mr. Adcock clearly testified that he would have had to obtain approval of MSPB prior to hiring Plaintiff for the position." Adcock's deposition shows that he was questioned about whether Gray and Brown met the qualifications for the CIO – not the DHI. Exhibit E, p. 34-36, p. 40. The Systems Information Officer Chief position required "Ten (10) years of directly related experience in a similar technical environment with a minimum of four years in a project management, team management or other management role." Exhibit AA.

On one hand, when testifying about Brown's qualifications for the CIO position, Adcock testified, "what I am saying is he meets – he appears to meet the

educational requirement – the requirement of education – I mean, of experience, of directly-related experience of ten years." Exhibit E, p. 40. Adcock was asked "So you're saying he does not have ten years of directly-related experience?" Adcock explained:

> "I am saying someone would have to interpret that to me. It is not clear – to me, in my interpretation it is not clearly defined as meeting the examples of work set out by the systems, by the state personnel board…That's based on my interpretation of looking at this. In the case of this, we would get the state personnel board to look at it and see if they agree or disagree with that." , "Not saying that he doesn't, but do (sic) [to] say, you know, they would have to have somebody look at it to interpret that." Exhibit E, p. 38.

On the other hand, when MDH was trying to convince Brown to settle Brown II while it was on appeal, MDH offered Brown a position as a Systems Manager III. The Systems Manager III position required applicants to possess 10 years of related experience. Exhibit W. In addition, in October of 2008, Davis stated in an e-mail that "Albert Brown won a lawsuit against the agency when the position was filled a few years ago with Mike Scales. He was never interviewed. Although he doe not appear to be one of the stronger candidates, he meets the minimum qualifications and is a MSDH employee." Exhibit O.

In his deposition taken on July 18, 2017, Davis flipped the script on his October 6, 2008 e-mail. Notwithstanding his e-mail to the contrary, Davis testified that it was his opinion that Brown was not qualified to be CIO. Exhibit P, p. 18, 29. Davis was also asked whether Brown met the minimum qualifications for the CIO position. Davis testified Brown "did not meet the minimum qualifications. He had the technical knowledge, but he did not have the management expertise and leadership expertise of which we were seeking." Exhibit P, p. 29.

Assuming arguendo that Adcock that Brown did not have ten years of related experience, it does not follow that he was not qualified for the DHI position.   The DHI position did not require applicants to have 10 years of experience.  Exhibit V.  The DHI/Office Director II position that Kevin Gray holds:

> "requires eight (8) years in the special experience defined below, six (6) years of which must have included line or functional administrative or advanced technical supervision.
>
> Special Experience:
>
> Employment must have been in and administrative, professional capacity in an area of work related to the functional responsibility of the unit in which the position exists.  In those agencies where registered specialists provide the primary source of functional and technical knowledge for planning and accomplishing the mission of the agency, the incumbent must be registered and experienced in that profession.   Work experience must have included supervising and coordinating a variety of functions.  Where applicable, minimum requirements shall be sufficient to meet those stated in 49-4-15 of the Mississippi Code 1972, Annotated.   Exhibit V.

Defendants also claim in their memorandum that "Plaintiff's resume indicates a lack of project management experience or experience in dealing with ITS."   During the 30(b)(6) deposition, undersigned counsel began asking Adcock if he questioned whether Brown had four years of experience "in a project management, team management or other management role."  Exhibit E, p. 37. Adcock responded that he was questioning whether Brown had "[t]en years.  Ten years of related experience."  Exhibit E, p. 37.  Simply put when Adcock was given an opportunity to Brown did not have four years of experience in project management, Adcock did not say Brown's "resumes indicates a lack of project management experience."

In *Brown I*, MDH argued that Brown was not qualified to serve as the CIO. After reviewing Brown's resume, Judge Barbour concluded that for summary judgment purposes Brown demonstrated he was qualified to be CIO, a position that had more duties and responsibilities than the DHI, the position defendants now argue Brown is not qualified to hold.   Like he did in *Brown I*, Brown has offered sufficient evidence to raise a genuine issue of material fact as to whether he was qualified to become DHI.   Consequently, this Court should find that Brown has carried his burden that he is qualified for DHI for summary judgment.

Alternatively, this Court should deny summary judgment and hold that MDH's failure to follow its own internal employment procedures can constitute to pretext. *Brown II*, April 4th, 2012 Order Denying Summary Judgment.   In the instant case, Currier sent out a memo on July 30, 2010 stating that "[s]elections for each particular opening **are made from among available candidates**." Exhibit A. (Emphasis added).    Currier testified that Davis, MDH's Human Resources Director, wrote the memo for her.  Exhibit X, p. 24.  Despite Currier's memo reaffirming MDH's commitment to equal opportunities, Adcock testified, Gray was the only person he approached and considered for the DHI position.  Exhibit C, p. 44.  In her deposition, Currier testified,  posting jobs and inviting all qualified applicants to apply helps to prevent discrimination.  Exhibit X, p. 52.  Like it in *Brown II*, MDH failed to follow its own internal employment procedures.  Consequently, this Court should hold as the *Brown II* Court did that  "an employer's failure to follow its own internal employment procedures can constitute evidence of pretext."

## BROWN HAS REBUTTED
## MDH'S LEGITIMATE, NON-DISCRIMINATORY
## REASON FOR NOT PROMOTING HIM

A plaintiff must create a presumption of intentional discrimination by establishing a *prima facie* case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "At that point, the McDonnell Douglas scheme shifts the burden back to the plaintiff to `show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination.'" February 3, 2006 Opinion and Order in *Brown v. Mississippi Department of Health*, 3:05CV109-WHB-AGN.

An employee may show that the employer's asserted justification is false. In *Brown I*, Judge Barbour stated:

> "It is therefore, possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination. Likewise, if the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent [or direct] evidence that discrimination was the real reason for the adverse employment action. The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination."

## MDH'S LEGITIMATE NON-DISCRIMINATORY REASON
## FOR SELECTING SCALES

MDH says its legitimate, non-discriminatory reason for hiring Gray was "Mr. Adcock recognized that the leadership of the department required an individual

with project management skills and someone who had an established relationship with ITS." When Adcock and Currier were asked about projects that Gray managed when he assumed the position, they could not name any projects Gray ushered through ITS. Exhibit C, p. 83-84, Exhibit X, p. 64. Minutes from the state's Information Technology Board and minutes from the MDH board do not show that Gray handled any projects between the two state entities since he became DHI. Exhibit HH and II. Conspicuously absent from the job description for DHI/Officer Director II, the position Adcock selected Gray to fill, project management experience is listed as a requirement to qualify for the position of DHI/Officer Director II. Exhibit V.

The Fifth Circuit has consistently condemned subjective promotional policies and practices. *Pegues v. Ms State Employment Serv.*, 699 F.2d 760, 765 (5th Cir.) *cert. denied*, 464 U.S. 991, 104 S Ct. 482, 78 L.Ed.2d 679 (1983). "Selection processes which rely on subjective judgments, despite the corralling by objective standards, provide the opportunity for intentional discrimination cognizable in a disparate treatment action." *Pegues*, 699 F.2d at 765. Moreover, in *Fisher v. Proctor & Gamble Mfg. Co.*, 613 F.2d 527, 546 (5th Cir. 1980), the Court stated "[t]his Court has recognized that promotion systems utilizing subjective evaluations by all white supervisors provide a ready mechanism for discrimination."

In *Little v. Master-Bilt Products, Inc.*, 506 F.Supp. 319, 334 (N.D. Miss. 1980), the Court noted that "a highly significant fact is that Master-Bilt does not post notices of job vacancies, qualifications for jobs, or promotion procedures, so that frequently no employee is aware that a promotion is in the offing until Master-Bilt

selects an employee to fill the vacant slot.  Indeed, Master-Bilt made no attempt to justify this subjective promotion policy as job related."  While subjective criteria "may serve legitimate functions, they also provide opportunities for unlawful discrimination" because the criteria itself may be pretext for discrimination.   In *Medina v. Ramsey Steel Company, Inc.,* 238 F.3d 674, 681 (5th Cir. 2001).

In the instant case, MDH did not post a notice for the DHI/Officer Director II position.  Brown did not know that MDH was considering selecting someone to serve as DHI/Officer Director II.   Similarly, in *Brown I*, MDH did not post its plans to hire a CIO.  Exhibit J.  Brown did not discover that MDH had selected Scales, a white male, for the CIO position until after MDH selected the person for the job.  In both cases, Adcock was at the helm of the hiring/promotion process for MDH's Information Technology Department.   In addition, the qualifications that Adcock allegedly relied on to select Gray are not included in the job description for DHI/Officer Director II.

As this Court is aware, under circumstances very similar to the circumstances present in this case, a jury found that MDH discriminated against Brown.  Exhibit J.  "Evidence of past discriminatory acts may be used to prove present discrimination so long as prior practices (are considered relevant to show independently actionable conduct occurring within the statutory period)."  *Little*, 506 F. Supp. at 333, citing *Fisher v. Proctor & Gamble Mfg. Co.*, 613 F.2d 527, 546 (5th Cir. 1980).  Consequently, this Court should find that Brown has offered sufficient evidence from which a reasonable finder of fact could find that the defendant's

legitimate nondiscriminatory reason, if any, for Brown's non-selection as

DHI/Officer Director II is pretextual.

### ALBERT BROWN HAS ESTABLISHED
### PRIMA FACIE CASE OF RETALIATION

Brown alleges he was not selected for DHI in retaliation for speaking out about

race discrimination in the workplace.   Namely, Brown sued MDH for race

discrimination in 2005 and race discrimination and retaliation in 2011.   To state a claim

for retaliation under Title VII, Brown must show: (1) he engaged in protected activity; (2)

he suffered an adverse employment action; and (3) a causal connection exists between the

protected activity and the employment action. *Aryain v. Wal-Mart Stores Tex. LP*, 534

F.3d 473, 484 (5th Cir. 2008).

The defendants concede that Brown has satisfied the first prong of the prima facie

case of his retaliation claim.   "The first element of the prima facie case for this claim is

satisfied because, when he filed a lawsuit under Title VII, even an unsuccessful lawsuit,

Hamilton engaged in a "protected activity."   *Hamilton v. Tex. DOT*, 85 Fed.Appx. 8, 12,

(5th Cir. 2004).

MDH argues that Brown cannot show that he suffered an adverse employment

action because he did not apply for the DHI position and he did not want any position

other than CIO.   As stated above, Brown's failure to apply for the DHI position is not

fatal to his retaliation claim.  Because MDH did not post the DHI position, Brown was

not required to file a formal application   *McLin,* 2015 U.S. Dist. LEXIS 25611 *12.

Defendants concedes in their Memorandum in Support of their Motion for Summary

Judgment that "Plaintiff's desire to be the Chief Information Officer ("CIO") at MSDH

is well documented through two prior lawsuits."

**BROWN HAS PROFFERED SUFFICIENT EVIDENCE
TO ESTABLISH A CAUSAL CONNECTION BETWEEN HIS PROTECTED
ACTIVITY AND HIS NON-SELECTION**

MSDH also contends Brown cannot establish a causal connection between any protected activity and his non-selection as DHI/Office Manager II.   Defendants say Brown's prior litigation is too remote in time to be the basis of a retaliation claim.   Brown disagrees.   In *Nowell v. Ill. Cent. R.R. Co.*, 2011 U.S. Dist. 92099 *38 (S.D. 2011), the Court pointed out that "temporal proximity is one factor courts consider to determine if a causal link exists between a plaintiff's protected activity and an adverse employment action, but is not determinative of retaliation.

In *Nowell*, the Court granted summary judgment on  the Plaintiff's retaliation claim because the Plaintiff  "failed to make a showing that any supervisor involved in his termination knew about his Title VII protected activity."   Id. at 39.  In the instant case, Brown has produced evidence that Adcock and Currier were aware of his 2005 and 2011 lawsuits.   Exhibit C, p. 55, Exhibit X, 22-23, 78.  In addition, Adcock was the decisionmaker in Brown's 2005 lawsuit and 2011 lawsuit.  Currier was the State Health Officer when Brown filed the lawsuit in 2011.  She was aware of both lawsuits when Kevin Gray was hired and was of the opinion that the agency was being unfairly sued.  Exhibit X, p. 22-23, 78.

In *Brown II*, MDH argued that Brown's 2005 lawsuit was too remote in time to satisfy the protected activity prong of his prima facie retaliation claim.   When the defendants raised this issue on summary judgment in Brown II, Brown I had been closed for approximately two years.  Judge Reeves explained "MDH is correct that temporal proximity can be a relevant factor when addressing the issue of causation

in a Title VII retaliation claim, but neither its presence nor its absence determines the outcome of the question.  Although the Supreme Court has indicated that temporal proximity must be `very close' to prove causation, this inquiry is relevant chiefly when a plaintiff relies solely on the temporal proximity between his protected action and his adverse outcome."

It is true that Brown initially filed suit in 2005 and 2011.   MDH, however, was still litigating *Brown II* when it announced that Gray had been selected as DHI. In fact, the record shows that the Fifth Circuit affirmed the jury verdict in favor of Brown on December 23, 2013.   The Fifth Circuit denied MDH's Petition for Rehearing on January 29, 2014 and issued a mandate on February 6, 2014.  On April 21, 2014, MDH filed a Petition for Writ of Certiorari.  On May 12, 2014, the Clerk of the U.S. Supreme Court gave notice of  MDH's Petition for Writ of Certiorari to the Fifth Circuit.   On May 13, 2014,  MDH hired Gray as DHI/Officer Manager II.

For the reasons outlined above, this Court should find that Brown has raised a genuine issue of material fact as to whether he was denied an opportunity to apply and to be selected for the DHI/Officer Director II position because he engaged in protected activity of which both decisionmakers, Currier and Adcock, had knowledge.

### ALBERT BROWN HAS REBUTTED MDH'S LEGITIMATE, NON-DISCRIMINATORY REASON FOR NOT PROMOTING HIM

After Brown successfully presents his prima facie case, the burden shifts to MDH to provide a "legitimate, non-retaliatory reason for the adverse employment action." *Hernandez v. Yellow Transportation, Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304-05 (5th Cir.1996) (citation omitted). Upon MDH's

presentation of its legitimate, non-retaliatory reason for the adverse employment action,

Brown must show whether retaliation was the but-for cause for MDH's action.

*Hernandez*, 670 F.3d at 657 (citing *Long*, 88 F.3d at 305).   Conspicuously absent from

defendants' Memorandum in Support of the Motion for Summary Judgment is any

assertion that it would have selected Gray notwithstanding Brown's two lawsuits against

the agency.

Brown "may avoid summary judgment on 'but for' causation by demonstrating 'a

conflict in substantial evidence on this ultimate issue.'" *Wheat v. Florida Parish Juvenile*

*Justice Commission*, Civil Action No. 14-30788 (5th Cir. January 5, 2016) (citing

*Hernandez*, 670 F.3d at 660 ("Evidence is 'substantial' if it is of such quality and weight

that reasonable and fair-minded men in the exercise of impartial judgment might reach

different conclusions.").

Brown reasserts his arguments made above to support his contention that he has

presented sufficient evidence for a jury to determine that the defendant's legitimate, non-

discriminatory reason is false or, if true, is not worthy of credence and is a pretext for

retaliation.   In addition, there is a substantial conflict in MDH's contention that Brown

was not qualified because he did not have 10 years experience.   The CIO position, not

the DHI position, required 10 years of experience.  Moreover, MDH is talking out of both

sides of its mouth.  When it came down to the DHI position, MDH says Brown was not

qualified because he did not have 10 years of experience.   Having advanced that

position, MHD offered Brown a System Manager III position, a position that requires 10

years of experience.  In addition, when Adcock was questioned during his deposition,

Adcock did not question whether Brown had four years of project management experience.

For the reasons outlined above, this Court should find that Brown has presented sufficient evidence for a jury to decide that MDH's legitimate non-discriminatory reason for selecting Gray is pretextual.

## MDH HAS NOT CARRIED ITS BURDEN OF PROVING
## THAT BROWN FAILED TO MITIGATE

MDH alleges that Brown failed to mitigate his damages. "The burden of proof is on the Defendant to prove that Plaintiff failed to mitigate his damages. To prove a lack of mitigation a defendant must prove that a plaintiff unreasonably failed to seek other employment. Defendant must prove there were jobs available which Plaintiff did not seek and could have obtained had he tried to obtain them." *Newcomb v. Corinth Sch. Dist.*, 2015 U.S. LEXIS 41700 17 (N.D. Miss.). "As an affirmative defense, proving a failure-to-mitigate is the employer's burden. To succeed on this defense, an employer must demonstrate that (1) `substantially equivalent work' existed, and (2) the plaintiff failed to exercise reasonable diligence to obtain the work." Id. at 17-18.

A defendant must point to actual jobs that were available that Plaintiff could have sought but didn't. Davis testified, "there have been numerous jobs, both in our agency and other agencies, at both his level and higher levels that have come open in the years he's been hear." The defendants have pointed to only one job that Brown was offered in 2015. The defendants, however, failed to inform the Court that it did not make an unconditional offer to promote Brown to the Systems Manager III position. The March 12, 2015 offer from one of MDH's attorneys to Brown's former counsel is clear. Exhibit T. Under the conditional offer, Brown would have to agree to the method that MDH

proposed to satisfy the judgment and pay attorney fees in Brown II.  Exhibit T.  In addition, Brown would be required to enter into a consulting agreement to perform the duties of Systems Manager III at an annual rate of $70,343.90.  Exhibit T.  Brown also would be required to resign or retire effective October 15, 2017 and utilized the maximum amount of his accrued leave available to reach 25-year mark.  Exhibit T.

Brown turned down the conditional offer from MDH's March 12, 2015.   Rightly so.  In *Mahoney v. Ernst & Young LLP*, 487 F.Supp. 2d 780,785 (S.D. Tex. 2006), citing *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 241, 102 S. Ct. 3057, 73 L. Ed. 2d 721 (1982), the Court explained:  "[t]he law, as the Supreme Court has articulated it, state that `absent special circumstances' a plaintiff's refusal of an unconditional offer for a "substantially similar" position stops the accrual of back-pay."  In the instant case, the defendants cannot show that it made Brown an unconditional offer for a substantially similar position.  Moreover, Brown's refusal to accept to accept the March 12, 2015 offer was reasonable because MDH capped the tie Brown could serve as a System Manager III and required his to withdraw his pending EEOC claim.

In addition, the defendants have offered no proof to show that Brown would have earned more than the DHI had he accepted the System Manager III position.  Brown testified his salary would have increased to approximately $70,000.00.  Exhibit I, p. 36, Exhibit T.  According to the March 12, 2015 letter, Brown's salary would have increased to $70,343.90, which is less than what MDH pays Gray, its current DHI.  Exhibit T. Gray testified in his deposition that he earns $72,920.00 a year.  Exhibit G, p. 56.

## DEFENDANTS ARE NOT ENTITLED
## TO THE SAME ACTOR INFERENCE

The defendants claim that Adcock is entitled to the same actor inference because they claim he promoted Brown to the Help Desk. Under the same actor inference, there is a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue. *Soublet v. La. Tax Comm'n*, 766 F.Supp. 2d 723, 729 (E.D. La. 2011). Defendants' reliance on the same actor inference is misplaced. Presumably, Adcock played a role in Brown receiving more duties, i.e. work related to the Help Desk. Assumption of extra duties does not a promotion make. In the instant case, Brown testified he received more work but he did not receive more pay for his added Help Desk duties.

Assuming arguendo that the assumption of extra duties constituted a promotion, the same actor inference still would not apply. The evidence is irrefutable that Adcock, the decisionmaker in the instant case, was the decisionmaker in *Brown I*, a race discrimination case in which the jury found for Brown. In *Soublet*, the Court listed three reasons to support its refusal to apply the inference. Pointing to the plaintiff's argument in *Zambetti v. Cuyahoga Community College*, the Court noted that there were good reasons to decline to apply or decline to give the same weight to the same actor inference in the failure to promote context as in the traditional termination context. The Court noted that the plaintiff in *Zambetti* argued that "the same actor inference should not apply in the failure to promote context because it was reasonable to believe that an employer might hire a disfavored race for an entry level position, but refuse to promote the employee above a certain level." "Second, the Court notes that the Fifth Circuit has yet to apply the same actor inference in resolving a discriminatory failure to promote case.

Third, the Court finds that the same actor inference is not applicable in resolving this judgment motion because an issue of fact exists as to whether Crosby was responsible for Soublet's hiring and non-promotion."

In the instant case, Adcock was not responsible for Brown's hiring when he joined MDH.  Adcock, however, was the decisionmaker on two occasions when Brown was not selected for the agency's highest-ranking position in MDH's Information Technology Department.  Consequently, this Court should decline to apply the same actor inference.

## ALBERT BROWN HAS PROPERLY<br>PLED A CLAIM UNDER 42 U.S.C. §1981

Defendants urge this Court to dismiss Brown's 1981 race claims against MDH, Adcock and Currier because Brown did not mention 42 U.S.C. § 1983 in his Amended Complaint.  This Court should refuse to toss out Brown's 1981 claim for race discrimination against MDH for his failure to list § 1983 in his Amended Complaint.  In *Johnson v. City of Shel*by, 135 S.Ct. 346 (2014), the Supreme Court summarily reversed the Fifth Circuit decision dismissing the Plaintiff's Fourteenth Amendment due process claims because the plaintiff failed to invoke 42 U.S.C. § 1983.  The Supreme Court held that "[f]ederal pleading rules call for `a short and plain statement of the claim showing that the pleader is entitled to relief, Fed. Rule Civ.Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted…In particular, no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim."

## BROWN'S EQUAL PROTECTION CLAIMS
## SHOULD NOT BE DISMISSED

Brown alleges that Adcock and Currier, refused to promote him on account of his race in violation of the Equal Protection Clause of the United States Constitution.  "To establish and Equal Protection claim, the plaintiff must prove that she was treated less favorably because of her membership in a protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.  *Felder v. Edwards*, 2015 U.S.  Dist. LEXIS 186156*11-12 (S.D. Miss.).

In the instant case, Brown has offered sufficient evidence to show that he was treated less favorably than other white employees who sought director's positions in MDH's Information Technology Department when Adcock served as CAO and Currier was the State Health Officer.  Brown was never promoted into a director's position. Gray, Dowdy, Dotson, and Reese, all whites, were promoted into directors' positions and the jobs were not posted.  In addition, Brown has not received an evaluation since he sued MDH.  MDH, however, evaluated Gray.  Adcock supervised both Brown and Gray.

In *Jones v. City of Port Arthur*, 2012 U.S. Dist. LEXIS 184469 *26 (E.D. Tex.), the Court held "[I]t is without question that [the Plaintiff has] a clearly established constitutional and statutory right to be free from racial discrimination in employment." More importantly, in *King v. Lawrence County Board of Education*, Civil Action No. 2:12-CV-68-KS-MTP, the district court judge held "[W]hen a plaintiff's allegations are sufficient to state a claim for intentional discrimination, an immunity defense will generally be foreclosed at the pre-discovery stage, as intentional racial discrimination is never objectively reasonable."

For the reasons set forth above, this Court should find that Brown has put forth sufficient evidence to establish a prima facie case of race discrimination against Adcock and Currier under the Equal Protection Clause. In addition, there is a genuine issue of genuine fact as to whether the defendants' legitimate non-discriminatory reason is pretextual.

## BROWN IS ENTITLED TO RECOVER PUNITIVE DAMAGES AGAINST ADCOCK AND CURRIER

Defendants contend that Brown cannot recover punitive damages from MDH. Brown agrees. The fact that Brown cannot recover damages from MDH does not bar Brown from recovering punitive damages against Adcock and Currier. If a jury returns a verdict against Adcock and Currier for violating Brown's clearly established right to be free from race discrimination, the law permits Brown to recover punitive damages from them in their individual capacity. *Upchurch v. City of Moss Point*, 2011 U.S. Dist. LEXIS 124116 *42 (S.D. Miss.).

Respectfully Submitted, this the <u>24th</u> day of August, 2017.

/s/ Lisa M. Ross
Lisa M. Ross, Esq.
MSB# 9755
P.O. Box 11264
Jackson, MS 39283-1264
(601)981-7900 (telephone)
(601)981-7917 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I, Lisa M. Ross, do hereby certify that I have this date by ECF, forward a true and correct copy of the foregoing Memorandum in Opposition to the Defendant's Motion for Summary Judgment to:

Armin Moeller, Esq.
Ashley Cannady, Esq.
Balch & Bingham

**SO CERTIFIED**, this the <u>24th</u> day of  August, 2017.

/s/ Lisa M. Ross
Lisa M. Ross